IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IPC PRINT SERVICES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE |
| | ) | |
| v. | ) | NO. 04-12341-GAO |
| | ) | |
| SYSKOPLAN CONSULTING INC. and | ) | |
| SYSKOPLAN AG, | ) | |
| | ) | |
| Defendants. | ) | **JURY TRIAL DEMANDED** |

## AMENDED COMPLAINT

NOW COMES IPC PRINT SERVICES, INC., formerly known as IPC Communication

Services, Inc., plaintiff herein ("IPC" or "Plaintiff"), and makes and files this Amended

Complaint against defendant SYSKOPLAN CONSULTING INC. and SYSKOPLAN AG

(collectively, "Syskoplan" or "Defendants"), and in support thereof respectfully shows as

follows:

### NATURE AND BASIS OF ACTION

1.

This is an action for breach of contract, fraudulent misrepresentation, negligent

misrepresentation, breach of the duty of good faith and fair dealing, unfair trade practices, and

unjust enrichment.  Plaintiff seeks equitable relief, damages, and attorneys' fees.

### PARTIES

2.

Plaintiff IPC is a corporation organized and existing under the laws of the State of

Michigan, having its principal place of business at 501 Colonial Drive, St. Joseph, Michigan.

IPC is a printing services company specializing in print manufacturing, electronic publishing, data management, assembly, distribution, and fulfillment.

3.

Upon information and belief, Defendant Syskoplan Consulting Inc. is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business at 950 Winter Street, Suite 3400, Waltham, Massachusetts.  Upon information and belief, Syskoplan Consulting Inc. is a consulting services company offering business process consulting, SAP software system implementation, and systems integration services.  Upon information and belief, Syskoplan Consulting Inc. is a wholly owned subsidiary of Defendant Syskoplan AG.

4.

Upon information and belief, Defendant Syskoplan AG is a company organized and existing under the laws of Germany, having its principal place of business at Bartholomäusweg 26, 33334 Gütersloh, Germany.  Upon information and belief, Syskoplan AG offers business process consulting, software system implementation, and systems integration services in the United States through its wholly owned subsidiary, Defendant Syskoplan Consulting Inc.  Upon information and belief, Defendant Syskoplan Consulting Inc. is the alter ego or agent of Defendant Syskoplan AG, and/or Defendant Syskoplan AG is the alter ego or agent of Defendant Syskoplan Consulting Inc., in view of the fact that, among other things, Defendant Syskoplan AG exercises pervasive control over the activities and operations of Defendant Syskoplan Consulting Inc., including the conduct alleged herein.

5.

Upon information and belief, Defendant Syskoplan AG and its representatives share responsibility with Defendant Syskoplan Consulting Inc. and its representatives in performing the consulting and other services required under contracts between Syskoplan Consulting Inc. and its customers, including the contracts at issue. Further, upon information and belief, Syskoplan Consulting Inc. enters into contracts with customers, including the contracts at issue, to provide consulting and other services in shared responsibility with its parent company, Syskoplan AG and Syskoplan AG's other subsidiaries and related entities.

6.

Throughout the course of the negotiation and performance of the agreements at issue here, it appeared to IPC as though Syskoplan AG and Syskoplan Consulting Inc. were the same company. Among other things, representatives of Syskoplan AG, including the Chairman of the Board of Syskoplan AG, actively and directly participated in the negotiation and performance of the agreements at issue and exercised significant control over the activities of Syskoplan Consulting Inc. representatives in connection with the negotiation and performance of the agreements at issue. Defendant Syskoplan AG and Defendant Syskoplan Consulting Inc. are collectively referred to herein as "Syskoplan" where both entities are responsible for the alleged conduct and/or where IPC cannot distinguish between the conduct of Defendant Syskoplan AG and Defendant Syskoplan Consulting Inc. because of the intermingling of Defendants' businesses, activities, and representatives.

## JURISDICTION AND VENUE

7.

This Court has subject matter jurisdiction over the claims stated herein pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest or costs, and the action is between a citizen of the State of Michigan, on the one hand, and a citizen of the State of Massachusetts and a citizen of Germany, on the other hand.

8.

This Court has personal jurisdiction over Defendant Syskoplan Consulting Inc. as a result of its residence in this forum and performance of the agreements at issue in this forum. This Court has personal jurisdiction over Defendant Syskoplan AG as a result of its performance of the agreements at issue in this forum.

9.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a). This action arises out of the transaction of business and other activities by Defendants within this District, and IPC alleges that a substantial part of the events or omissions giving rise to the claims occurred in this District.

## **FACTS**

10.

In or around the Fall of 2002, IPC was engaged in a search for a print-specific computer system to replace its existing system. IPC needed an integrated system configured for the print industry and considered several vendors, including Unit Inc.

11.

On or around September 20, 2002, IPC provided Unit Inc. with a Request for Proposal ("RFP") outlining IPC's specific requirements. IPC's RFP included a detailed list of the functionality and capabilities that IPC required. Many of the requirements identified in IPC's RFP were specific to the printing industry and tailored to the unique business processes of a printer.

12.

In early October, 2002, Unit Inc. responded to IPC's RFP and, for each of the required features identified in IPC's RFP, provided a specific response as to whether Unit Inc. could provide such features and functionality to IPC with its Print.IT software product.

13.

In or around March of 2003, Syskoplan notified IPC that Syskoplan had acquired some or all of the assets of Unit Inc., including the Print.IT software system. At that time, Syskoplan adopted Unit Inc.'s response to IPC's RFP and confirmed that Syskoplan could provide the same functionality as represented in Unit Inc.'s response to IPC's RFP. On March 26, 2003, Rick Pitts of SAP (Vice President of Channel Sales) and representatives from Syskoplan, including Patricia Nagle (President of Syskoplan Consulting Inc.), Uwe Goehring, and Steve Antoni (Syskoplan Consulting Inc. Account Executive), met with IPC representatives to discuss IPC's requirements, as set forth in IPC's RFP, and Syskoplan's plan to meet those requirements. During this meeting, Syskoplan and SAP representatives promised IPC special treatment because IPC would be Syskoplan's first U.S. print installation, and Syskoplan wanted to use IPC as a reference/demo site.

14.

On April 7, 2003, Syskoplan provided IPC with a "fixed price proposal to IPC for the Print.IT solution" in response to IPC's RFP (the "Proposal"). According to Syskoplan's Proposal, the purpose of the Proposal was "to provide IPC with a solution that meets its specific business and functional requirements as conveyed over the past several months of interaction with the IPC team." Syskoplan represented in the Proposal that it was an established and certified SAP solution partner and a strategic development partner of SAP and that it specialized in SAP R/3 software implementations with a strong focus on the media industry, supposedly including the printing, publishing, and packaging industries. Syskoplan also represented to IPC in the Proposal that, among other things:

- "Print.IT is a solution offering that includes a pre-configuration for mySAP Business Suite";

- Syskoplan "provides SAP clients with a 'best practice' solution" which includes "off the shelf templates; pre-defined configuration processes, business content, and workflow; and technical know how and print specific domain expertise for implementing Print.IT and SAP R/3";

- "the Print.IT solution enhances a printing company's ability to estimate and manage their production processes";

- "the Print.IT solution leverages the comprehensive features within mySAP Business Suite and refines them to address the key business issues in the printing industry minimizing risk, cost, time-to-value realization and providing the maximum ROI"; and

- the Print.IT solution "leverages proven world class ERP technology from SAP and a vertically integrated solution that enables a rapid deployment."

15.

From approximately early March of 2003 through June 20, 2003, Syskoplan representatives periodically met with IPC representatives and called IPC representatives from Syskoplan Consulting Inc.'s office in Massachusetts.  In addition, in April of 2003, IPC representatives met with Syskoplan AG's representatives in Germany and visited several of Syskoplan AG's demo sites in Europe to observe other Syskoplan AG customers' software systems at work.  During these meetings and conversations, the parties discussed IPC's requirements and how Syskoplan could provide a system that would meet IPC's specific needs as a printing company.  In the course of these meetings and conversations, Syskoplan representatives, including Patricia Nagle and Peter Radochia (Vice President of Sales and Business Development for Syskoplan Consulting Inc.), represented to IPC that:

- Syskoplan and its consultants understood the complexity of the print industry and understood IPC's specific requirements as a printing company;

- Syskoplan's Print.IT system could provide the functionality that IPC was seeking, as outlined in IPC's RFP;

- Print.IT was pre-configured for the print industry -- i.e., it already included most, if not all, of the print-specific functionality that IPC required -- and would therefore require minimal additional configuration;

- Syskoplan and its consultants had the expertise necessary to assess IPC's needs and provide the functionality in Print.IT to meet IPC's needs;

- the Print.IT system could be installed at IPC in approximately six months; and

- Syskoplan's consultants knew the Print.IT software well and were competent to install the software to meet IPC's needs in approximately six months.

16.

In addition, in early April of 2003, Syskoplan representatives, including Patricia Nagle and Peter Radochia, demonstrated a java-based browser application to IPC and represented that IPC would receive certain functionality with this application as part of the Print.IT system. In fact, the Print.IT system did not have the promised functionality, and such functionality was never provided to IPC. Syskoplan knew at the time that significant parts of the application were not functional, but nevertheless represented that the application was functional in order to convince IPC to hire Syskoplan.

17.

Syskoplan made these representations about its software and its capabilities in order to induce IPC to enter into an agreement with Syskoplan to purchase the Print.IT software and Syskoplan's consulting services. IPC reasonably relied on these representations to its detriment by, among other things, contracting to obtain Syskoplan's Print.IT system and development services and SAP's mySAP software.

18.

These representations by Syskoplan were false, and Syskoplan knew they were false at the time Syskoplan made them, or Syskoplan was negligent and failed to exercise reasonable care or competence in obtaining or communicating this information. For example, Syskoplan represented that the Print.IT software already contained certain functionality requested by IPC when Syskoplan knew that the functionality either did not exist or would require significant revision or complete rewriting before it could be made workable for IPC. Syskoplan also

represented that it had all the necessary software and simply needed to modify the software

when, in fact, Syskoplan actually had to develop a substantial portion of the software that

Syskoplan agreed to provide IPC. Further, Syskoplan represented that its consultants were

experienced in the print industry and understood the requirements of a printing company, when,

in fact, Syskoplan's consultants, including its Project Manager, did not understand even the

basics of the printing business.

19.

IPC, unaware of the falsity of these representations, agreed to license the Print.IT

software from Syskoplan Consulting Inc., to license the mySAP software from SAP, and to

obtain consulting and development services from Syskoplan Consulting Inc. to add the necessary

functionality to the Print. IT software package. On May 21, 2003, Patricia Nagle of Syskoplan

sent IPC a letter of intent "to demonstrate IPC and Syskoplan's commitment to execute the

Print.IT Proposal created by Syskoplan and submitted to IPC." Thereafter, Syskoplan and IPC

representatives continued to negotiate the contractual terms and conditions of the project, and in

May of 2003, Dr. Manfred Wassel, Chairman of the Board of Defendant Syskoplan AG, met

with IPC management at SAP's Sapphire Conference in Florida to further negotiate and finalize

the contractual terms and conditions of the project. On or around June 20, 2003, IPC entered

into several agreements with Syskoplan Consulting Inc. and its partner SAP, including (1) the

Master Services Agreement between IPC and Syskoplan Consulting Inc. for the provision of the

Print.IT support services (the "Services Agreement"); (2) the General End-User License

Agreement, under which IPC licensed the Print.IT software and the BBK scheduling software

from Syskoplan Consulting Inc. (the "Syskoplan License Agreement"); (3) the SAP License

Agreement, under which IPC licensed the mySAP software from SAP; and (4) the Authorized

- 9 -

Affiliate Agreement between IPC and Syskoplan Consulting Inc. (collectively, the "Agreements"). Although Syskoplan AG is not a named party to the Agreements, Syskoplan AG and its representatives were actively and directly involved in the negotiation and performance of the Agreements.

20.

The Services Agreement incorporates IPC's RFP and Syskoplan's Proposal in response to the RFP, which collectively became known as the Statement of Work.

21.

The Statement of Work provided that Syskoplan would use questionnaires to determine the level of personalization necessary and would use a workshop approach during the "blueprint process" of gathering information to validate all final requirements and content associated with the project. This process took place early in the project. However, Syskoplan's blueprint process was horribly inferior. The process was insufficiently specific and detailed for Syskoplan to actually understand IPC's requirements and provide the necessary functionality. Moreover, during this process, Syskoplan representatives demonstrated that they did not understand basic requirements and functions of a printing company and were therefore forced to ask IPC very basic questions about IPC's business.

22.

Syskoplan Consulting Inc.'s consultants worked remotely from their offices in Massachusetts from approximately August of 2003 through January of 2004. In addition, from approximately August of 2003 through June of 2004, Syskoplan Consulting Inc.'s consultants worked with representatives of Syskoplan AG and cm4, Syskoplan AG's subsidiary located in Germany, in connection with the performance of the Agreements. Upon information and belief,

- 10 -

representatives of Syskoplan AG and cm4 were responsible for developing and customizing the software that IPC contracted for under the Agreements.

23.

According to the Statement of Work, the first acceptance milestone for IPC was targeted to be completed within sixty days of the initial project kickoff. The milestone was to be "the demonstration of functionality of Print.IT specific to two provided job scenarios" which were to include creating an estimate, creating a sales order, creating a production order, creating a change order, data collection, and creating an invoice.

24.

During the milestone acceptance testing event on or around September 19, 2003, Syskoplan demonstrated to IPC a data collection system using Syskoplan's system in Massachusetts and represented that IPC would receive such data collection system under the Agreements. However, Syskoplan misleadingly demonstrated portions of the system that worked while concealing the fact that the demonstrated data collection system was not fully functional and, in fact, could never have been functional and installed at IPC. Indeed, at the time of the demonstration, Syskoplan was already working on a separate system that it planned to use as a substitute deliverable for purposes of completing the Statement of Work. Subsequently, Syskoplan representatives have admitted that certain software and functionality that was demonstrated to IPC was "vaporware" and was not nearly complete.

25.

Under the Services Agreement, Syskoplan Consulting Inc. was to "provide and make available to [IPC] such resources as shall be necessary to perform the services called for by the Statement of Work." (Services Agreement, § 1.3). The Statement of Work provided that the

Syskoplan work team was to include a project manager, basis consultant, ABAP/4 developer, Print.IT consultant, FI/CO consultant, SD consultant, and MM/PP consultant.  The Statement of Work also provided that Syskoplan would function as the primary solution implementer and that a Syskoplan Project Manager would run the project.

26.

During the course of the project, Syskoplan experienced a significant rate of turnover among its consultants, including in the critical Project Manager role.  At several times during the project, Syskoplan did not have the required Syskoplan consultants working on the project, and at times, Syskoplan's Project Manager was acting as both the Project Manager and the SD consultant.

27.

Syskoplan Consulting Inc. also warranted under the Services Agreement that it would perform its work "in a workmanlike and professional manner by personnel of Syskoplan having a level of skill in the area commensurate with the requirements of the scope of work to be performed." (Id. at § 1.5).  Syskoplan Consulting Inc. warranted that the services and deliverables specified in the Statement of Work "will be performed in a professional workmanlike manner and will materially comply with the specifications set forth herein." (Id. at § 8.2).

28.

Syskoplan's consultants did not have the level of skill necessary to perform the work that Syskoplan agreed to perform for IPC.  IPC notified Syskoplan at numerous times throughout the project that Syskoplan's consultants -- and, in particular, its Project Manager -- did not have the

requisite experience and knowledge of the print industry to understand IPC's requirements and provide the functionality that IPC needed.

29.

IPC informed Syskoplan of these and other deficiencies in Syskoplan's performance at various points throughout the project. For example, IPC's Project Manager notified Syskoplan early in the project on July 25, 2003 of a number of deficiencies in Syskoplan's implementation, including disorganized workshops and implementation, late deliverables, lack of direction, and poor project management by Syskoplan. IPC expressed concern at that time that Syskoplan consultants did not understand IPC's needs well enough to configure the system and that Syskoplan consultants displayed a lack of understanding of "best practices" for the print industry.

30.

On October 1, 2003, IPC notified Syskoplan in writing that, among other things, the "proof of concept test" was insufficient, certain promised functionality was not demonstrated or was insufficient, and the "blueprint" process was not sufficiently detailed. On October 23, 2003, IPC notified Syskoplan that, among other things, the baseline configuration software still had not been installed and Syskoplan still had not provided a qualified, effective FI/CO consultant. On October 29, 2003, IPC again notified Syskoplan of issues arising out of Syskoplan's poor project management and requested corrective action by Syskoplan. Syskoplan never cured its breaches and failed to conform to the Statement of Work despite repeated notice from IPC at these and various other points throughout the project.

31.

The Statement of Work provided that "it is an estimated 25 week project to fully implement the baseline Print.IT configuration" and that the project "go-live" was to take place by November/December of 2003. This date was postponed several times due to delays caused by Syskoplan, and the go-live never took place.

32.

As a result of Syskoplan's inability and/or unwillingness to comply with the project's timelines, IPC was forced to expend additional IPC employee resources and take IPC employees' time away from other business responsibilities. In addition, as a result of Syskoplan's consultants' inability to understand IPC's requirements, IPC employees were forced to undertake some of Syskoplan's responsibilities under the Services Agreement and Statement of Work. Thus, Syskoplan's failure to perform its responsibilities meant that IPC had to expend significant extra time and effort on its part to keep the project moving toward its deadlines. The reasonable value of the work that IPC employees were forced to devote to the project, but was wasted due to Syskoplan's failures, is in excess of $625,000.

33.

The Statement of Work identified one of the key project deliverables as "a working system as defined by the Statement of Work." Syskoplan did not provide IPC a working system as defined by the Statement of Work, and to date, nothing that Syskoplan has provided to IPC is functional. The Print.IT software is and was not "pre-configured" for the print industry and did not include much of the functionality that IPC needed and that Syskoplan promised to provide to IPC. Syskoplan failed to deliver a number of key deliverables that were required under the Statement of Work, including, among other things, laundry list pricing, versioning, change order

management, scheduling, multiple ship-to addresses, and data collection. By Syskoplan's own admission, it would take a substantial amount of time to modify the software to provide this and other required functionality.

34.

In early to mid March of 2004, Dr. Manfred Wassel of Syskoplan AG and Dick McCarthy, who had replaced Patricia Nagle as President of Syskoplan Consulting Inc., met with IPC management to discuss IPC's concerns with, among other things, delays in the project and the lack of deliverables. During these meetings, Dr. Wassel admitted to IPC that Syskoplan never should have contracted with IPC because Syskoplan could not deliver the functionality promised in the Statement of Work under the terms and conditions promised therein. Dr. Wassel informed IPC representatives that the Syskoplan AG Supervisory Board was very concerned about the issues arising with Syskoplan Consulting Inc. and its work in the United States, and that the Syskoplan AG Supervisory Board had directed Dr. Wassel to spend at least one week of every four weeks in the United States attempting to resolve issues concerning Syskoplan Consulting Inc. and its customers. During this meeting, Dr. Wassel offered to refund all of the amounts IPC had paid to Syskoplan at that point, but asked IPC to give Syskoplan additional time to create a revised project plan. Dr. Wassel stated that he intended to solicit the assistance of Syskoplan AG's subsidiary cm4 to determine whether the software modules that Syskoplan had agreed to provide to IPC in the Agreements and the Statement of Work could be provided. IPC agreed to give Syskoplan additional time to create a revised project plan, but Syskoplan never provided IPC with an acceptable revised project plan and never refunded any of the money IPC had paid to Syskoplan.

35.

On July 14, 2004, IPC notified Syskoplan of IPC's termination of the project in view of,
among other things, Syskoplan's misrepresentations regarding the existence of certain
functionality, Syskoplan's failure to provide sufficient (and in some cases, competent) resources
and consultants to IPC, Syskoplan's failure to deliver a detailed project plan, and Syskoplan's
failure to deliver the promised functionality.

36.

The Print.IT software is not functional and cannot be made functional unless IPC expends
a significant additional amount of resources beyond that already incurred in connection with the
project for Syskoplan to deliver the contracted functionality.  Syskoplan should repay to IPC all
amounts that IPC paid to Syskoplan for the nonfunctional Print.IT system, as well as additional
amounts that IPC was forced to incur in relation to the project.

37.

To date, IPC has paid Syskoplan approximately $515,000 for the Print.IT software and
consulting fees, and to date, IPC has received nothing of any value in return for these
expenditures.  Moreover, IPC paid Syskoplan approximately $96,000 in maintenance fees when
Syskoplan never delivered operational software, and thus, there is nothing to maintain.  IPC also
paid Syskoplan approximately $100,000 for Syskoplan's consultants' travel expenses relating to
the project.  Further, the reasonable value of the work that IPC employees were forced to devote
to the project, but was wasted due to Syskoplan's failures, is in excess of $625,000, and IPC
incurred an additional $35,000 to send its employees to SAP training courses in connection with
the project.  Thus, IPC has incurred approximately $1,370,000 in damages as a result of
Syskoplan's acts complained of herein.

38.

Upon information and belief, Defendant Syskoplan Consulting Inc. does not have the assets or funds necessary to satisfy a judgment against it in this case. According to a December 1, 2004 announcement posted on Syskoplan's web site located at www.syskoplan.com, the Executive Board and Supervisory Board of Defendant Syskoplan AG have decided to "withdraw" from Syskoplan's product business in the United States – i.e., the business of Defendant Syskoplan Consulting Inc. – in an effort to "realign product activities and foreign endeavors." In addition, the December 1, 2004 announcement stated that Syskoplan AG has agreed to waive all of its loans to Syskoplan Consulting Inc. These decisions made by the Executive Board and Supervisory Board of Defendant Syskoplan AG suggest that Defendant Syskoplan Consulting Inc. has not been profitable, is experiencing financial trouble, and/or does not have sufficient assets to cover its debts and expenses.

## COUNT ONE

## BREACH OF THE SERVICES AGREEMENT

39.

IPC incorporates herein and realleges, as if fully set forth in this paragraph, the allegations of the preceding paragraphs.

40.

As set forth above, Syskoplan entered into express and implied contractual obligations to IPC in connection with the Services Agreement. Syskoplan breached its contractual obligations under the Services Agreement without justification or excuse by, among other things, failing to provide conforming software and consulting services in connection with the Print.IT

implementation, as represented to IPC during negotiation of the Services Agreement and as promised under the Services Agreement.

### 41.

As a direct and proximate consequence of Syskoplan's material breaches of the Services Agreement, IPC has been damaged in an amount exceeding $1,370,000.

### 42.

Syskoplan is liable to IPC for damages in an amount exceeding $1,370,000, plus interest, attorneys' fees, and costs.

## COUNT TWO

## FRAUDULENT MISREPRESENTATION

### 43.

IPC incorporates herein and realleges, as if fully set forth in this paragraph, the allegations of the preceding paragraphs.

### 44.

As set forth above, Syskoplan made numerous false, material representations to IPC during the negotiation and performance of the Agreements. These false representations concerned, among other things, the functionality and capabilities of the Print.IT software and Syskoplan's skill and knowledge of the print industry. In addition, Syskoplan represented to IPC that certain software and functionality that Syskoplan demonstrated to IPC -- including the java-based browser application that Syskoplan demonstrated to IPC during the negotiation of the Agreements and the data collection system that Syskoplan demonstrated to IPC at the acceptance testing milestone -- existed and would be provided to IPC, when in fact, such software and functionality did not actually exist and Syskoplan did not intend to provide it to IPC.

45.

Syskoplan knew at the time that these representations were false, or Syskoplan should have known that such representations were false and made such representations with reckless disregard for the truth.  Syskoplan made such representations to IPC with the intent to induce IPC to enter into the Agreements.

46.

IPC reasonably relied upon Syskoplan's representations in entering into the Agreements, and Syskoplan knew that IPC entered into Agreements in reliance upon Syskoplan's representations.

47.

As a direct and proximate consequence of Syskoplan's fraudulent misrepresentations, IPC has been damaged in an amount exceeding $1,370,000.

48.

Syskoplan is liable to IPC in an amount exceeding $1,370,000, plus interest, attorneys' fees, and costs.

49.

Syskoplan has acted in bad faith, willfully, wantonly, recklessly, and with intentional disregard for the rights of others.  Accordingly, IPC is entitled to punitive damages to punish and deter such conduct.

## COUNT THREE

## NEGLIGENT MISREPRESENTATION

### 50.

IPC incorporates herein and realleges, as if fully set forth in this paragraph, the allegations of the preceding paragraphs.

### 51.

As set forth above, Syskoplan made numerous false representations to IPC during the negotiation and performance of the Agreements. These false representations concerned, among other things, the functionality and capabilities of the Print.IT software and Syskoplan's skill and knowledge of the print industry. In addition, Syskoplan represented to IPC that certain software and functionality that Syskoplan demonstrated to IPC -- including the java-based browser application that Syskoplan demonstrated to IPC during the negotiation of the Agreements and the data collection system that Syskoplan demonstrated to IPC at the acceptance testing milestone -- existed and would be provided to IPC, when in fact, such software and functionality did not actually exist and Syskoplan did not intend to provide it to IPC.

### 52.

Syskoplan failed to exercise reasonable care in ascertaining the accuracy of the information contained in such representations and/or in communicating such information to IPC.

### 53.

IPC justifiably relied upon Syskoplan's representations in entering into the Agreements, and Syskoplan knew that IPC entered into the Agreements in reliance upon Syskoplan's representations.

54.

As a direct and proximate consequence of Syskoplan's negligent misrepresentations to IPC, IPC has been damaged in an amount exceeding $1,370,000.

55.

Syskoplan is liable to IPC for damages in an amount exceeding $1,370,000, plus interest, attorneys' fees, and costs.

56.

Syskoplan has acted in bad faith, willfully, wantonly, recklessly, and with intentional disregard for the rights of others. Accordingly, IPC is entitled to punitive damages to punish and deter such conduct.

## COUNT FOUR

## BREACH OF EXPRESS WARRANTIES

57.

IPC incorporates herein and realleges, as if fully set forth in this paragraph, the allegations of the preceding paragraphs.

58.

Syskoplan contracted to provide certain software and services to IPC, as set forth in the Agreements. Syskoplan warranted under the Services Agreement that Syskoplan would perform its work in a workmanlike and professional manner by personnel of Syskoplan having a level of skill in the area commensurate with the requirements of the scope of work to be performed. Syskoplan further warranted that the services and deliverables specified in the Statement of Work would be performed in a professional workmanlike manner and would materially comply with the specifications set forth in the Statement of Work.

59.

Syskoplan's consultants did not have the level of skill necessary to perform the work that Syskoplan agreed to perform for IPC.  Syskoplan's consultants -- including its Project Manager -- did not have the requisite experience and knowledge of the print industry to understand IPC's requirements and provide the functionality that IPC needed.  Syskoplan charged IPC for the Print.IT software and for installation and maintenance of the software, but did not deliver conforming software and consulting services in accordance with the Agreements.  IPC notified Syskoplan of the defects in the software and of Syskoplan's defective installation of the software, but Syskoplan never cured the defects.

60.

The above-referenced conduct of Syskoplan constitutes breach of the express warranties contained in the Services Agreement.

61.

As a direct and proximate consequence of Syskoplan's breach of the express warranties contained in the Services Agreement, IPC has been damaged in an amount exceeding $1,370,000.

62.

Syskoplan is liable to IPC for damages in an amount exceeding $1,370,000, plus interest, attorneys' fees, and costs.

## COUNT FIVE

## BREACH OF THE IMPLIED COVENANT
## OF GOOD FAITH AND FAIR DEALING

63.

IPC incorporates herein and realleges, as if fully set forth in this paragraph, the allegations of the preceding paragraphs.

64.

As set forth above, Syskoplan entered into express and implied contractual obligations to IPC. Syskoplan breached the covenant of good faith and fair dealing that is implied in the Agreements by, among other things, failing to provide conforming software and services and failing to support the Print.IT software system, as represented to IPC during negotiation of the Agreements and as promised under the Agreements. Syskoplan also breached the covenant of good faith and fair dealing by misrepresenting the status of the software both before and during the course of performance of the Agreements, and by misrepresenting the qualifications of its employees and failing to provide qualified (and in some cases, competent) employees to perform services under the Agreements.

65.

As a direct and proximate consequence of Syskoplan's breaches of its implied covenant of good faith and fair dealing, IPC has been damaged in an amount exceeding $1,370,000.

66.

Syskoplan is liable to IPC for damages in an amount exceeding $1,370,000, plus interest, attorneys' fees, and costs.

## COUNT SIX

## UNJUST ENRICHMENT

67.

IPC incorporates herein and realleges, as if fully set forth in this paragraph, the allegations of the preceding paragraphs.

68.

As set forth above, IPC furnished valuable services to Syskoplan by undertaking and performing many of the duties and responsibilities that Syskoplan was obligated to perform under the Services Agreement.  Syskoplan was unwilling and/or unable to perform such duties and responsibilities.  Syskoplan accepted such services from IPC and knew or should have known that IPC, in performing those services, expected not to be charged by Syskoplan for the services that IPC had to perform itself.

69.

Syskoplan has been unjustly enriched as a result of IPC's performance of many of the duties and responsibilities that Syskoplan was obligated -- and paid by IPC -- to perform under the Services Agreement.

70.

IPC is entitled to recover for the reasonable value of the services that it performed for Syskoplan and/or to an offset of such amount against any payments owed under the Agreements.

## COUNT SEVEN

## UNFAIR TRADE PRACTICES

71.

IPC incorporates herein and realleges, as if fully set forth in this paragraph, the allegations of the preceding paragraphs.

72.

As set forth above, Syskoplan made numerous deceptive, false representations to IPC during the negotiation and performance of the Agreements, in violation of the Massachusetts Consumer Protection Act, M.G.L. Chapter 93A.

73.

Syskoplan's false representations concerned, among other things, the functionality and capabilities of the Print.IT software and Syskoplan's skill and knowledge of the print industry. In addition, Syskoplan represented to IPC that certain software and functionality that Syskoplan demonstrated to IPC existed and would be provided to IPC, when in fact, such software and functionality did not actually exist and Syskoplan did not intend to provide it to IPC. Syskoplan knew or should have known at the time that these representations were false, and Syskoplan made such representations to IPC with the intent to induce IPC to enter into the Agreements. Syskoplan knew that IPC reasonably relied upon Syskoplan's representations in entering into the Agreements.

74.

As a direct and proximate consequence of Syskoplan's deceptive, false representations to IPC, IPC has been damaged in an amount exceeding $1,370,000.

75.

Syskoplan is liable to IPC for damages in an amount exceeding $1,370,000, plus interest, attorneys' fees, and costs.

76.

Syskoplan has acted willfully and knowingly in violation of Chapter 93A. Accordingly, IPC is entitled to treble damages to punish and deter such conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, by virtue of the unlawful conduct of Defendants as alleged in the Complaint, IPC respectfully prays that:

1) the Court enter judgment that Defendant Syskoplan Consulting Inc. is liable for breach of the Services Agreement, fraudulent misrepresentation, negligent misrepresentation, breach of express warranties, breach of the implied covenant of good faith and fair dealing, and unfair trade practices in violation of Massachusetts G.L. Chapter 93A, and that Syskoplan Consulting Inc. has been unjustly enriched;

2) the Court enter judgment that based on the corporate disregard doctrine, Defendant Syskoplan AG is liable for breach of the Services Agreement, fraudulent misrepresentation, negligent misrepresentation, breach of express warranties, breach of the implied covenant of good faith and fair dealing, and unfair trade practices in violation of Massachusetts G.L. Chapter 93A, and that Syskoplan AG has been unjustly enriched;

3) IPC be awarded damages in an amount to be proven at trial, but in any event in excess of $1,370,000;

4) punitive damages be assessed against Defendants to deter their bad faith, knowing,

   willful, wanton, and reckless conduct and its intentional disregard for the rights of others;

5) IPC be awarded treble damages for Defendants' knowing and willful violation of Chapter

   93A;

6) Defendants be required to pay IPC both the costs of this action and reasonable attorneys'

   fees, to the extent permitted by law;

7) this action be subject to a trial by jury; and

8) IPC be granted such other and further relief as the Court deems just and proper.


Respectfully submitted, this __7__ day of January, 2005.



Louis M. Ciavarra
BBO # 546481
Bowditch & Dewey, LLP
311 Main Street
P.O. Box 15156
Worcester, Massachusetts  01601-0156
Telephone: (508) 926-3408
Facsimile: (508) 929-3011

Attorney for Plaintiff
IPC PRINT SERVICES, INC.

## CERTIFICATE OF SERVICE

This is to certify that I have this day served the foregoing Amended Complaint upon

defendants, by causing a true and correct copy thereof to be deposited in the United States Mail,

postage prepaid, addressed to defendants' counsel of record as follows:

> David L. Ferrera
> Nutter McClennen & Fish LLP
> World Trade Center West
> 155 Seaport Boulevard
> Boston, Massachusetts 02210-2604

This __7__ day of January, 2005.

> Louis M. Ciavarra
> BBO # 546481
> Bowditch & Dewey, LLP
> 311 Main Street
> P.O. Box 15156
> Worcester, Massachusetts  01601-0156
> Telephone: (508) 926-3408
> Facsimile: (508) 929-3011
>
> Attorney for Plaintiff
> IPC PRINT SERVICES, INC.