UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ───────────────────────────── ) | |
| IPC PRINT SERVICES, INC., ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | DOCKET NO. 04-12341-GAO |
| ) | |
| SYSKOPLAN CONSULTING ) | |
| INCORPORATED, and SYSKOPLAN, AG, ) | |
|     Defendants. ) | |
| ───────────────────────────── ) | |

**DEFENDANT, SYSKOPLAN AG'S MEMORANDUM IN SUPPORT OF ITS
MOTION TO DISMISS THE AMENDED COMPLAINT**

**I.**    **Procedural History**

Defendant Syskoplan, AG ("SAG") files this memorandum in support of its motion to dismiss the Amended Complaint. In its original Complaint, filed on November 3, 2004, the plaintiff, IPC Print Services, Inc. ("IPC") named Syskoplan Consulting, Inc. ("Syskoplan") as the sole defendant. IPC subsequently filed an Amended Complaint on January 11, 2005, adding Syskoplan's German parent corporation, SAG, as an additional defendant. IPC recently accomplished service of process on SAG on September 6, 2005 in Germany, under the Hague Convention. Subsequently, the Court allowed SAG's assented-to motion to enlarge up to and including October 17, 2005, the time within which SAG must file a pleading in response to the Amended Complaint, and subsequently allowed SAG's second assented-to motion to enlarge that deadline by two days, from October 17, 2005, to October 19, 2005.

968016v1

## II.    **Factual Background**[1]

### A.    **The Parties**

SAG is a publicly-traded company organized and existing under the laws of Germany, having its principal place of business in Gütersloh, Germany. **Amended Complaint, ¶ 4**. SAG is the sole shareholder of Syskoplan, a Delaware corporation with a principal place of business in Massachusetts. **Id., ¶ 3**. SAG's business is focused on providing systems integration and consultation services for its customers primarily located in Germany and other European countries. **Ex. A, Affidavit of Manfred Wassel ("Wassel Aff."), ¶ 7**. Syskoplan provides systems integration and consultation services for its customers located in North America. **Id., ¶ 8**. The systems integration and consultation services that SAG and Syskoplan provide in their separate respective geographic areas include those involving software applications created and/or owned by a Germany company, SAP.[2] IPC is a corporation organized and existing under the laws of the State of Michigan, having its principal place of business at 501 Colonial Drive, St. Joseph, Michigan. **Amended Complaint, ¶ 2**. IPC is engaged in print manufacturing, electronic publishing and other printing services. **Id.**

### B.    **The Contracts**

This case arises out of several written contracts entered into between IPC and Syskoplan. **Id., ¶ 19**. Syskoplan's corporate parent, SAG, was *not* a signatory to *any* of those contracts. **Id.** The contracts do not purport to impose *any* duties on SAG. All of the activities described in the Amended Complaint arise out of or are directly connected to the negotiation and the performance of the written contracts between *Syskoplan* and IPC. The contracts pertained to the purchase and

---

[1] Except where noted, all facts herein are taken from the Plaintiff's Complaint and *for the purposes of this Motion to Dismiss only*, are assumed to be true. However, SAG reserves the right to deny or contest any and all factual allegations in the Amended Complaint, in any proceedings hereafter. *See* 5C C.A. Wright & A.R. Miller, FEDERAL PRACTICE & PROCEDURE at § 1370, at 265-266 (2004).

[2] SAP is not a signatory to any of the contracts at issue in this case, and is not a party to this lawsuit.

implementation of a new computer software application (called "Print.IT") owned by Syskoplan to replace IPC's existing computer system(s). **Id., ¶¶ 12-13**. The Print.IT application contained pre-configured content specifically related to the printing industry, which, when implemented with licensed SAP software, enhanced the performance of the SAP software solution for the printing company. **Id., ¶ 14**. SAG had implemented a similar add-on product for SAP solutions that it had implemented for some of its European customers. IPC, however, was aware that Syskoplan had never implemented its own Print.IT product in the United States. **Id., ¶ 13**.

### C.    Facts Pertaining to Jurisdiction

#### 1.    SAG's Contacts with Massachusetts

IPC's Amended Complaint fails to allege any specific instance where a purported SAG employee or representative conducted *any* activity in Massachusetts that was related to either the IPC project or even general business activities. Other than being the sole shareholder of a Delaware corporation that is based in Massachusetts, SAG has *no* contacts with the Commonwealth of Massachusetts. **Ex. A, Wassel Aff., ¶ 9**. SAG does not maintain offices, telephone listings, bank accounts or employees in Massachusetts. **Id., ¶ 10**. It does not target its advertising efforts at Massachusetts citizens nor does it contract to sell goods or services to Massachusetts residents. **Id., ¶ 11**. SAG does not own or lease any property in Massachusetts. **Id., ¶ 12**. Nor does it pay taxes in Massachusetts. **Id.**

#### 2.    SAG's Relationship with Syskoplan

Syskoplan is one of five subsidiaries in which SAG has a controlling interest. **Id., ¶ 4**. SAG's Executive Board consists of two directors and its Supervisory Board consists of six members. **Id., ¶ 2**. Dr. Wassel is the Chairman of SAG's Executive Board; he is not a member of the Supervisory Board. **Id., ¶ 2**. The Supervisory Board meets approximately four times per

3

year. **Id.,** ¶ **5**.  The purpose of those meetings is to discuss the overall performance and direction of SAG and its subsidiaries; the Supervisory Board does not get involved with the operational details of any of its subsidiaries. **Id.,** ¶ **6**.

Dr. Wassel also serves on the Board and is the Chief Executive Officer of Syskoplan (a fact that is essential to this motion to dismiss). **Id.,** ¶ **3**.  The day-to-day management of Syskoplan is overseen by its President and other executive officers. **Id.,** ¶ **13**.  Dr. Wassel traveled to the United States approximately once a month through 2003 and 2004. **Id.,** ¶ **14**.  His trips averaged three-to-four days in duration. **Id.,** ¶ **14**.  The purpose of those trips were to meet with Syskoplan's management to receive reports on Syskoplan's overall operations. **Id.,** ¶ **14**. Dr. Wassel last visited the United States in early 2005, because at or about that time, the reporting structure between Syskoplan and SAG changed, so that Syskoplan reported to another individual at SAG. **Id.,** ¶ **14**.

### 3.    SAG Did Not Negotiate the IPC Contracts

Dr. Wassel first met representatives of IPC at a trade conference in Florida in 2003. **Id.,** ¶ **15**.  The conference took place from June 16th to 18th. **Id.**[3]  The contracts at issue in this case were executed on June 20, 2003. **Amended Complaint,** ¶ **19**.  The contracts had been negotiated and finalized by IPC's then-President, Patricia Nagle, prior to Dr. Wassel's meeting with IPC's representatives, which took place over dinner along with several representatives from SAP. **Ex.**

---

[3] In its unverified Amended Complaint, IPC falsely asserts that this conference occurred in May of 2003.  Amended Complaint, ¶ 19 ("[I]n May of 2003, Dr. Manfred Wassel, Chairman of the Board of Defendant Syskoplan AG, met with IPC management at SAP's Sapphire Conference in Florida to further negotiate and finalize the contractual terms and conditions of the project.")  This allegation is demonstrably false.  In addition to Dr. Wassel's sworn affidavit, in which he testifies that the Sapphire Conference was held between June 16 – 18, 2003, in Florida, SAG submits herewith as **Exhibit B**, a true and accurate copy of an SAG press release, which confirms Dr. Wassel's sworn assertion, and refutes IPC's unsworn assertion.  The discrepancy is significant, because IPC and Syskoplan signed all of the multiple, detailed contracts on June 20, 2003, i.e., two days after the conference.  By falsely alleging that Dr. Wassel met with IPC representatives in May--*one month* before the contracts were signed--IPC attempts to make more plausible, the contention that Dr. Wassel was involved in the contract negotiations.

968016v1

A, Wassel Aff., ¶ 15. Hence, while the IPC contracts were generally discussed over dinner, no negotiations took place. **Id.**

In April 2003, SAG hosted IPC representatives at its headquarters in Germany, to showcase some of SAG's demo sites and solutions it had provided for its European customers. **Id.,**¶ 16. SAG frequently allows its subsidiaries access to such sites as a marketing tool to show that the subsidiaries are part of a larger corporate family with strong ties to key software providers, such as SAP. **Id.**

### 4. SAG was not Involved in the Performance of the Contracts

SAG was not involved in any way with Syskoplan's performance of the IPC contract. **Id.,** ¶ 17. Dr. Wassel first learned of problems with the IPC contract in January 2004--six months *after* the contract was signed. **Id.** He then took action *in his capacity as Chief Executive Officer of Syskoplan* to try to resolve the issues with IPC, including attending a meeting at IPC's Michigan offices in March 2004. **Id.** Dr. Wassel did not attend that meeting as an ambassador of SAG nor did he make any statements concerning SAG's Supervisory Board because, as stated above, the Supervisory Board does not involve itself in such levels of detail with respect to subsidiary operations. **Id.,** ¶ 17.

### D. Facts Pertaining to the Piercing the Corporate Veil Theory

IPC's Amended Complaint is a weak and fatally flawed attempt to establish a basis for piercing the corporate veil and holding SAG liable in this case. IPC's vague and conclusory allegations concerning SAG's purported involvement in IPC's dealings with Syskoplan fall far short of satisfying IPC's pleading burden. IPC repeatedly qualifies its vague and conclusory allegations against SAG as being "[u]pon information and belief," without alleging specific facts to support its conclusions. For example, IPC alleges:

> Upon information and belief, Defendant Syskoplan Consulting Inc.
> is the alter ego or agent of Defendant Syskoplan AG, and/or
> Defendant Syskoplan AG is the alter ego or agent of Defendant
> Syskoplan Consulting Inc., in view of the fact that, among other
> things, Defendant Syskoplan AG exercises pervasive control over
> the activities and operations of Defendant Syskoplan Consulting
> Inc., including the conduct alleged herein.

**Amended Complaint, ¶ 4**.  IPC further alleges the following:

> Upon information and belief, Defendant Syskoplan AG and its
> representatives share responsibility with Defendant Syskoplan
> Consulting Inc. and its representatives in performing the consulting
> and other services required under contracts between Syskoplan
> Consulting Inc. and its customers, including the contracts at issue.
> Further, upon information and belief, Syskoplan Consulting Inc.
> enters into contracts with customers, including the contracts at
> issue, to provide consulting and other services in shared
> responsibility with its parent company, Syskoplan AG and
> Syskoplan AG's other subsidiaries and related entities.

<u>Id.</u>, ¶ 5.

IPC further alleges that:

> [t]hroughout the course of the negotiation and performance of the
> agreements at issue here, it appeared to IPC as though Syskoplan
> AG and Syskoplan Consulting Inc. were the same company.

<u>Id.</u>, ¶ 6.  Yet, IPC fails to allege any specific actions taken or representations made by SAG

representatives which led IPC to allegedly believe this.  As supposed support for the foregoing

assertion, IPC musters only the following "fact":

> Among other things, representatives of Syskoplan AG, including
> the Chairman of the Board of Syskoplan AG, actively and directly
> participated in the negotiation and performance of the agreements
> at issue and exercised significant control over the activities of
> Syskoplan.

<u>Id.</u>  IPC identifies only one purported representative of SAG: the "Chairman of the Board of

Syskoplan AG."  By "Chairman of the Board of Syskoplan AG", IPC is referring to Dr. Manfred

Wassel, who is the Chairman of SAG's Executive Board.  What IPC neglects to inform the

6

Court, however, is that Dr. Wassel *is also the CEO of Syskoplan*.  Thus, because IPC fails to

state specifically what Dr. Wassel allegedly did or said, and what IPC's basis is for alleging that

any of his actions were done on behalf of SAG, either in the negotiation of or performance of the

contracts, and fails to identify any other purported representative of SAG who did so, this

conclusory allegation fails to establish a proper basis for asserting liability against SAG.

In Paragraph 19, IPC alleges that in May of 2003, at a trade show conference, "Dr.

Manfred Wassel, Chairman of the Board of Defendant Syskoplan AG, met with IPC

management . . . to further negotiate and finalize the contractual terms and conditions of the

project." **Id., ¶ 19**.  As noted above, however, the referenced trade show was unquestionably in

June, just a few days before the contracts were signed by the parties, and not in May, as IPC

erroneously alleged.  The Amended Complaint does not allege with any specificity what Dr.

Wassel allegedly said or did, that would support an assertion: 1) that he was part of the

substantive negotiation of these complex contracts, on the eve of their signing; and 2) that

anything he said or did should be a basis for asserting liability against SAG--a non-signatory to

the contracts.

In Paragraph 22, IPC alleges that at some point *after* the signing of the contracts, some

representatives of SAG and some representatives of another subsidiary of SAG, "cm4",

consulted with Syskoplan and were responsible for developing or customizing the software that

was the subject of IPC's contracts with Syskoplan:

> from approximately August of 2003 through January of 2004.  In
> addition, from approximately August of 2003 through June of
> 2004, Syskoplan Consulting Inc.'s consultants worked with
> representatives of Syskoplan AG and cm4, Syskoplan AG's
> subsidiary located in Germany, in connection with the performance
> of the Agreements.  Upon information and belief, representatives
> of Syskoplan AG and cm4 were responsible for developing and

> customizing the software that IPC contracted for under the
> Agreements.

**Id.,** ¶ **22**.

In Paragraph 34, IPC alleges that nearly one year after IPC entered into the contracts with

Syskoplan, Dr. Wassel and Syskoplan's President met with IPC representatives, and that in this

meeting, Dr. Wassel was critical of Syskoplan, and that SAG's Supervisory Board had instructed

him to travel frequently to the United States to meet with Syskoplan's customers and help

resolve any disputes with those customers. IPC further alleges that, at this meeting, Dr. Wassel

offered to refund all of the amounts of money that IPC had paid Syskoplan.[4]  IPC also alleges

that Dr. Wassel informed IPC representatives that he intended to solicit the assistance of SAG's

subsidiary, cm4, to work as consultants on this project. **Id.,** ¶ **34**.

The only other specific mention of SAG in the Amended Complaint concerns a

announcement posted on Syskoplan's web site on December 1, 2004 (i.e., one month after IPC

filed its original Complaint in this matter), which stated that SAG's Executive Board and

Supervisory Board

> decided to 'withdraw' from Syskoplan's product business in the
> United States - i.e., the business of Defendant Syskoplan
> Consulting Inc. -- in an effort to 'realign product activities and
> foreign endeavors.'  In addition, the December 1, 2004
> announcement stated that Syskoplan AG has agreed to waive all of
> its loans to Syskoplan Consulting Inc. These decisions made by
> the Executive Board and Supervisory Board of Defendant
> Syskoplan AG suggest that Defendant Syskoplan Consulting Inc.
> has not been profitable, is experiencing financial trouble, and/or
> does not have sufficient assets to cover its debts and expenses.

**Id.,** ¶ **38**. This paragraph in the Amended Complaint is more significant for its revelation of the

purpose behind IPC's Amended Complaint than for adding anything of substance to IPC's

---

[4] IPC does not (and cannot in good faith) allege that IPC paid *SAG* any money pursuant to its contracts with
Syskoplan. All of the money paid, was paid to Syskoplan—not SAG.

claims.  Apparently searching for what it thought might be a deeper pocket, IPC subsequently amended the complaint, adding Syskoplan's corporate parent, SAG as an additional defendant.

The few specific references to SAG in the Amended Complaint are noted above.  Most of IPC's half-hearted efforts to state claims against SAG consists of lumping together Syskoplan and SAG in the remainder of its allegations, with no attempt to distinguish between the two:

> Defendant Syskoplan AG and Defendant Syskoplan Consulting Inc. are collectively referred to herein as "Syskoplan" where both entities are responsible for the alleged conduct and/or where IPC cannot distinguish between the conduct of Defendant Syskoplan AG and Defendant Syskoplan Consulting Inc. because of the intermingling of Defendants' businesses, activities, and representatives.

**Id.**, ¶ 6.  Thus, throughout the remainder of the Amended Complaint, whenever IPC refers to alleged actions of representatives of "Syskoplan", the Court and the defendants are left to wonder which defendant IPC is referring to.  Even in the case of the one individual identified by name—Dr. Manfred Wassel—IPC's description is not specific enough, because IPC has failed to disclose to the court that Dr. Wassel is the CEO of Syskoplan.

## III.  <u>Argument</u>

The Amended Complaint is essentially a reproduction of the original Complaint with SAG's name slapped on as an additional party defendant.  IPC has failed to meet its pleading burden of alleged specific facts sufficient to support the assertion of personal jurisdiction over SAG, or to support a piercing the corporate veil claim against SAG.  Instead, IPC relies on breezy conclusions of corporate intermingling or alleged activities by unidentified SAG representatives.  The Amended Complaint does not even include independent counts against SAG.  Most striking, however, is that the Amended Complaint seeks to implicate SAG almost exclusively through allegations that its board chairman insinuated himself in the negotiation and performance of Syskoplan's contract with IPC--*but the Amended Complaint fails to disclose that*

9

*the board chairman is also the CEO of Syskoplan.* Even if Dr. Wassel were involved in the pre- or post-contract activities, he would have been acting as the CEO of the contracting party, and not as a Board Chairman of a non-contracting party.

The Amended Complaint wholly ignores the plaintiff's pleading burden and hides a fundamental relationship from the Court. It also entirely ignores the well-developed body of law concerning corporate intermingling and piercing the corporate veil which prohibits any action against SAG based upon the Amended Complaint's allegations. The document is fatally flawed, except with respect to its essential purpose: to cause measurable expense and distraction to the shareholder of the sole original defendant, Syskoplan, for tactical gain in the litigation.

## A.    STANDARD FOR DISMISSAL UNDER FED. R. CIV. P. 12(b)(6)

Under Fed. R. Civ. P. 12(b)(6), a complaint must be "well pleaded" and contain more than mere conclusory statements that a plaintiff has a valid claim of some type and is thus deserving of relief. <u>See</u> *Chongris v. Bd. of Appeals*, 811 F. 2d 36, 37 (1st Cir.), *cert. denied*, 483 U.S. 1021 (1987). Dismissal is appropriate when "if as a matter of law, it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). The plaintiff's complaint must contain "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Roth v. United States*, 952 F. 2d 611, 613 (1st Cir. 1991), *quoting Gooley v. Mobil Oil Corp.*, 851 F. 2d 513, 515 (1st Cir. 1988). The complaint must be grounded in a "plausible legal theory" so that the defendant (as well as the Court) can understand plaintiff's allegations. *DiPerri v. Federal Aviation Admin.*, 671 F. 2d 54, 59 n. 4 (1st Cr. 1982). However, a court does *not* need to accept every allegation made by the plaintiff as true, especially if they are conclusory or generalized. Rather,

10

> In connection with run-of-the-mine motions brought under Rule 12(b)(6), a reviewing court is obliged neither to 'credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation,' [] nor to honor subjective characterizations, optimistic predictions or problematic suppositions. []. 'Empirically unverifiable' conclusions, not 'logically compelled, or least supported, by the stated facts,' deserve no deference.

*United States v. AVX Corp.*, 962 F.2d 108, 115 (1st Cir. 1992) (internal citations omitted).

**B.    THERE IS NO BASIS FOR EXERCISING PERSONAL JURISDICTION OVER SAG.**

**1.    The Legal Standard for Exercising Personal Jurisdiction**

Because jurisdiction is based upon diversity of citizenship in this case, the court must look to Massachusetts law to determine whether it has jurisdiction over SAG. *Gray v. O'Brien*, 777 F.2d 864, 866 (1985). The state law of the forum state applies. *Noonan v. Winston Co.*, 902 F. Supp. 298, 302 (1995). Under the Massachusetts Long-Arm Statute, M.G.L. c. 223A, jurisdiction is conferred "when some basis for jurisdiction enumerated in the Long-Arm Statute has been established" and when the "exercise of jurisdiction under State law [is] consistent with basic due process requirements mandated by the United States Constitution." *Good Hope Indus., Inc. v. Ryder Scott Co.*, 378 Mass. 1, 5-6 (1979).

The Massachusetts Long-Arm Statute, G. L. c. 223A, §3 provides in pertinent part as follows:

> A Court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's:
>
> a.    transacting any business in this Commonwealth;
>
> b.    contracting to supply services or things in this Commonwealth;
>
> c.    causing tortious injury by an act or omission in this Commonwealth;

11

    d.    causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth;

    e.    having an interest in, using or possessing real property in this Commonwealth.

M.G.L. c. 223A, §3.

Even if jurisdiction is authorized under the forum state's long arm statute, dismissal is appropriate under Fed. R. Civ. P. 12 (b)(2) where the court's exercise of jurisdiction would violate due process because (1) the defendant has insufficient contacts with the forum state, and (2) maintenance of the suit in the forum state will offend traditional notions of fair play and substantial justice. See *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980).

Specific jurisdiction exists when the defendant's contacts with the forum state arise from or are directly related to the plaintiffs cause of action. *Helicopteros Nacionales de Colombia D. Hall*, 466 U.S. 408, 414 n.8 (1984). The district court must examine the relationship between the defendant, the forum, and the litigation to determine whether maintaining the suit would offend traditional notions of fair play and substantial justice. *Shaffer v. Heitner*, 433 U.S. 186, 203 (1977). A court has specific jurisdiction if the defendant committed at least one act in the forum and the act is substantially related to the suit. General jurisdiction exists when the cause of action is unrelated to the defendant's contacts but the defendant has engaged in "continuous and systematic" activities within the forum state. *Helicopteros*, 466 U.S. at 414-16.

The plaintiff bears the burden, if challenged, of establishing that jurisdiction exists over the defendant. See *Ealing Corp. v. Harrods, Ltd.*, 790 F.2d 978, 979 (1st Cir. 1986). Absent an evidentiary hearing, a plaintiff's jurisdictional allegations will be held to the "prima facie"

standard of review, requiring the plaintiff to demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the Constitution, but will not credit factual allegations that are merely conclusory or based upon far-fetched inferences. *W. Marine Prods., Inc. v. Dolphinite, Inc.*, 2005 U.S. Dist. LEXIS 7489 *at *4-5. See also, *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 618-619 (1st Cir. 2001).

### 2.      SAG Has No Direct Contacts with Massachusetts

SAG has no presence in Massachusetts other than its ownership interest in Syskoplan. It does not maintain offices, employees or bank accounts in Massachusetts. It does not pay taxes or insure any property in Massachusetts and it does not target its advertising and marketing efforts at Massachusetts residents. Thus, this Court does not have general jurisdiction over SAG. Also, the allegations in the Amended Complaint that specifically discuss contact between SAG and IPC--namely, touring SAG's headquarters in Germany, and allegedly negotiating the contracts in Florida--all took place *outside* of Massachusetts. Moreover, even if SAG's alleged actions caused injured to IPC, IPC's injury occurred in *Michigan* (where it is located)--not Massachusetts. The mere fact that a SAG is the parent corporation of Syskoplan, is insufficient to justify jurisdiction over SAG. *Miller v. Honda Motor Co., Ltd.*, 779 F.2d 769, 772 (1st Cir. 1985).

### C.      IPC FAILS TO MEET ITS BURDEN OF PLEADING SPECIFIC FACTS THAT WOULD SUPPORT A "PIERCING THE CORPORATE VEIL" THEORY.

IPC argues that Syskoplan is the "alter ego" of SAG and that application of the doctrine of piercing the corporate veil is justified so as to find personal jurisdiction over SAG and hold it liable for IPC's actions. IPC's allegations, however, are faulty from a pleading perspective as they fail to specifically allege how SAG exercised pervasive control over its subsidiary to justify application of the doctrine.

968016v1

In Massachusetts, disregard of the corporate entity is permitted:

> (a) when there is active and direct participation by the representatives of one corporation, apparently exercising some form of pervasive control, in the activities of another and there is some fraudulent or injurious consequence of the intercorporate relationship, or (b) when there is a confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporations and their representatives are acting.

*Logan Equipment Corp. v. Simon Aerials, Inc.*, 736 F. Supp. 1188, 1205 (D.Mass. 1990) citing *My Bread Baking Co. v. Cumberland Farms, Inc.*, 353 Mass. 614, 619-20, 233 N.E.2d 748 (1968). "The plaintiff must present clear evidence to defeat a presumption of corporate separateness. General allegations of control are insufficient when stated in a vague and conclusory fashion." *Giguere's Supermarket Inc. v. Hannaford Bros. Co.*, 1982 U.S. Dist. LEXIS 16139, *1 (D.Mass. 1982) (internal citations omitted).

IPC fails to meet its pleading burden with respect to its corporate veil claim because IPC fails to specifically allege how SAG exercised pervasive control over its subsidiary to justify application of the doctrine. Instead, IPC relies on vague, conclusory allegations about the nature of SAG's relationship with IPC, none of which are followed up with or further supported by additional factual allegations specifically showing pervasive control of Syskoplan, that is, control over Syskoplan's day-to-day operations, by its parent corporation. The fact that Syskoplan touted its relationship with SAG and arranged for a visit to SAG's headquarters in Germany as part of its marketing strategy would not establish sufficient corporate intermingling or pervasive control. See *Logan Equipment Corp.*, 736 F. Supp. at 1205. The fact that Dr. Wassel serves as an officer and director of both SAG and Syskoplan is likewise unpersuasive, because as it is well-accepted that parent and subsidiary corporations may have some degree of overlap in

14

corporate officers and directors without piercing the corporate veil. *Id.*; *Miller v. Honda Motor Co., Ltd.*, 779 F.2d 769, 772 (1st Cir. 1985). The few instances where IPC specifically mentioned Dr. Wassel's alleged involvement in the subject matter of this litigation does not meet the pleading burden to adequately allege a piercing the corporate veil theory and, therefore, cannot support exercise of personal jurisdiction over SAG.

### D. THERE IS NO BASIS FOR FINDING SAG LIABLE FOR ANY INJURIES TO IPC.

#### 1. IPC Cannot Rely on Syskoplan's Actions As A Basis for Holding SAG Liable

As with its assertions as to personal jurisdiction over SAG, IPC also invites this court to apply the "alter ego" theory for determining that SAG is liable for Syskoplan's actions under its contract with IPC. It is a well-established precedent, that "there is nothing fraudulent or against public policy in limiting one's liability by the appropriate use of corporate insulation." *Miller*, 779 F.2d at 773. Absent a showing that the defendants' dealings were fraudulent and had injurious consequences or that defendants have used the corporate form merely to avoid liability for wrongdoing, SAG cannot be held liable for the actions of its subsidiary. *Logan Equipment*, supra.

For example, the Amended Complaint alleges that Syskoplan enters into contracts with customers "in shared responsibility with its parent company." Amended Complaint, ¶5. Clearly the tone of the statement is meant to suggest some loss of distinction between the entities and promises further specific allegations of wrongdoing. However, those specific allegations are never made. "Shared responsibility" could mean anything, including some sort of sub-contracting arrangement which can be a perfectly reasonable and legitimate transaction between a parent and subsidiary. Moreover, IPC's allegations are refuted by the very written contracts

that are the basis for its claims. SAG is not a signatory to any of the contracts, and the contracts do not purport to impose any duties on SAG. Even properly alleged, "shared responsibility" would not necessarily provide a basis for a claim against a parent corporation, just as a general contractor can "share" responsibility with a subcontractor, while the buyer has no contract claim against the subcontractor.

These types of co-conspiratorial allegations are cloaked in ambiguity and stand in stark contrast to the more specific allegations concerning Syskoplan's performance of the contract which clearly identify names of Syskoplan personnel involved with the project, along with specific dates and statements attributed to those individuals. If SAG was so clearly involved with the performance of the contract, IPC should be able to allege more than vague generalizations about the relationship between SAG and IPC. IPC is relying on tone within the Amended Complaint to fill the factual gaps of its pleading. As discussed above, it is required to do more than that if it expects this Court to apply the "alter ego" doctrine to hold SAG liable under the contract with IPC.

### 2.    SAG Is Not Separately Liable for IPC's Injuries

Separate from SAG's alleged control over Syskoplan which IPC has failed to properly allege in the Amended Complaint, SAG cannot be held liable for any of the individual counts brought in the Amended Complaint as IPC has failed to allege one or more materials facts that would justify a finding of liability separately against SAG. Each count is addressed in turn below.

### a.    Breach of the Written Contracts

IPC admits that SAG was not a party to any of the contracts at issue. IPC vaguely alleges that SAG was "actively and directly" involved with the negotiation and performance of the

16

contract with IPC. Amended Complaint, ¶19. However, the Amended Complaint is utterly silent as to *how* SAG was involved. IPC's statements of SAG's involvement are nothing more than conclusory conjecture and do not come close to refuting the well-established legal presumption that corporate separateness exists. Nor does the Amended Complaint establish any other theory according to which SAG could properly be bound to the contract. As a result of their separate corporate identities, the signature of Syskoplan cannot be used to bind SAG to the contract with IPC. See generally, *Templeton Bd. of Sewer Comm'rs v. Am. Tissue Mills of Mass., Inc.*, 19 Mass. L. Rep. 322; 2005 Mass. Super. LEXIS 208, *9-*12 (2005). Count One of the Amended Complaint against SAG should be therefore be dismissed.

### b.     Fraudulent Misrepresentation

Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Fed. R. Civ. P. 9(b). "This heightened pleading standard is satisfied by an averment of the who, what, where, and when of the allegedly false or fraudulent representation." *Pearce v. Duchesneau Group, Inc.*, 2005 U.S. Dist. LEXIS 21295, *22-*25 (D. Mass. 2005). "To prevail on a claim of fraudulent misrepresentation under Massachusetts law, the plaintiff must show that the defendant made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff reasonably relied upon the representation as true and acted upon it to his damage." Id.

IPC's failure to meet the burden of specific pleading with respect to SAG's involvement with the negotiation of the contract is clear. IPC does not identify any statements made by any SAG employees as to capabilities and functionality of the Print.IT software as it would relate to

17

IPC's business purposes. As IPC has failed to make such a showing, dismissal of Count Two of the Amended Complaint against SAG is warranted.

### c.    Negligent Misrepresentation

The elements of negligent misrepresentation are virtually identical to those set forth for fraudulent misrepresentation. See generally, *Logan Equipment*, supra, at 1199. Again IPC is required to set forth the statements upon it relied in entering the contract and, again, it has failed to plead facts specific as to statements made by SAG, rather than IPC, that contributed to its injuries. Count Three of the Amended Complaint against SAG should accordingly be dismissed.

### d.    Breach of Express Warranties

IPC cannot rely on the express warranty of workmanship in the contracts for recovering against SAG because, as argued above, SAG is not a party to the contracts with IPC and cannot be bound by their terms. Accordingly, Count Four of the Amended Complaint against SAG should be dismissed.

### e.    Breach of the Covenant of Good Faith and Fair Dealing

The only contracts at issue is the written agreements between IPC and Syskoplan. IPC has not alleged any oral agreement directly with SAG. Therefore, the covenant of good faith and fair dealing only runs with the written contracts as there are no other agreements between IPC and either of the defendants. Accordingly, since SAG is not a party to the contracts with IPC, it cannot have breached the implied covenant of good faith and fair dealing. As a result, Count Five of the Amended Complaint against SAG should be dismissed.

### f.    Unjust Enrichment

All monies paid by IPC under the contract were paid to Syskoplan, not SAG. The doctrine of unjust enrichment generally applies against those who have *actually* received monies

or other items of value through improper means.  SAG did not receive any money from IPC.

SAG is unaware of any novel theory or precedent that a parent corporation is unjustly enriched,

where its subsidiary receives payment.  Count Six should be dismissed as to SAG.

### g.    Unfair Trade Practices

Finally, Count Seven of the Amended Complaint must fail against SAG for two reasons:

(1) Massachusetts General Laws Chapter 93A ("93A") creates a cause of action for business

persons injured as a result of unfair methods of competition or unfair or deceptive acts or

practices utilized by other commercial entities, as long as the unfair or deceptive acts occurred

"primarily and substantially" within the Commonwealth of Massachusetts; and, (2)

Massachusetts courts have held that 93A does not apply to mere breach of contract cases. Mass.

Gen. L. c. 93A, §11; *Whitinsville Plaza, Inc. v. Kotseas*, 378 Mass. 85, 390 N.E.2d 243 (1979);

*Pepsi-Cola Metropolitan Bottling Co. v. Checkers, Inc.*, 754 F.2d 10, 18 (1st Cir. 1985);

*Commercial Union Ins. Co. v. Seven Provinces Ins. Co.*, 217 F.3d 33, 40 (1st Cir. 2000).

Massachusetts has no relation to the alleged acts or injuries between SAG and IPC.  All

of the actions specifically attributed to SAG employees in the Amended Complaint would have

occurred primarily in Germany and the injury to IPC would have occurred in Michigan. As a

result, 93A cannot be applied against SAG.  Moreover, the totality of IPC's action arises from a

mere breach of contract.  It is well-established that 93A will not apply in such cases.

19

**IV.     Conclusion**

WHEREFORE, for all of the reasons set forth above, the Court should dismiss the plaintiff's Amended Complaint against the defendant, Syskoplan AG.

Respectfully Submitted,

**SYSKOPLAN AG,**
Defendant
By Its Attorneys,
MORRISON MAHONEY LLP


/s/Michael J. Racette

_____
Nicholas P. Alexander, BBO #544173
Michael J. Racette, BBO #555350
250 Summer Street
Boston, MA 02210
(617) 439-7500

I hereby certify that a true copy of the
above document was served upon the attorney
of record for each party by  in accordance with
the Fed.R.Civ.P. on October 19, 2005.

    /s/Michael J. Racette
        Michael J. Racette

20

968016v1